HERMAN J. STERNBERG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 55758. Promulgated July 26, 1935.

*David Baron, Esq.*, for the petitioner.
*Bernard D. Daniels, Esq., C. A. Ray, Esq.*, and *T. M. Mather, Esq.*, for the respondent.

OPINION.

McMAHON: The first question presented is whether the petitioner is entitled to deduct, in the calendar year 1928, an amount of $19,-170.73 as a debt ascertained to be worthless and charged off. Leo M. Geissal, who was office manager of the petitioner and had charge of petitioner's books and records, and the petitioner himself, each testified that this amount represented "advances" made to the Cache River Dredge Co., which was a joint venture composed of the petitioner as an individual and A. V. Wills & Sons, a corporation. It is not clear just what these witnesses meant by the word "advances." However, considering the evidence as a whole, we can not conclude that the amount constituted loans which would give rise to an indebtedness. The records of the petitioner show that this amount was the excess of the amounts paid by petitioner from September 4, 1919, to March 3, 1924, to or for the Cache River Dredge Co. over the amounts received by him from such company during the period from December 23, 1919, to January 25, 1924. The account in the records of the petitioner in which this item appears is headed "Cache River Dredge Company, Investment Account," and the evidence shows that the payments were made to the company for the purpose of financing the purchase of equipment needed on the job. The evidence further shows that the agreement between the petitioner and the Cache River Dredge Co. provided that the moneys paid to that company by the petitioner should be repaid out of the receipts of the joint venture. It is also shown by the evidence that the agreement of joint venture provided that the petitioner and A. V. Wills & Sons should each furnish half the funds and equipment and receive half the profits. There is no evidence as to how much money or equipment was furnished by A. V. Wills & Sons and there is nothing to show that the amount paid in by the petitioner amounted to more than his share of the amount to be contributed. In short, there is no proof to show that any portion of the amount advanced by petitioner was on behalf of A. V. Wills & Sons, giving rise to a debt from A. V. Wills & Sons to the petitioner. Nor do we see how it can be reasoned under any circumstances that there was a debt owing from the joint venture to the petitioner. Petitioner himself was one of the two parties to the joint venture upon an equal basis. We can not assume that the amounts paid were not for and on behalf of the petitioner in accordance with the agreement of the joint venture. It should be noted that this was not a partnership. The United States Circuit Court of Appeals for the Seventh Circuit so held in an action between this petitioner and the trustee in bankruptcy for the estate of A. V. Wills & Sons (29 Fed. (2d) 235). It is our opinion that the amount of $19,170.73 did

not constitute a debt owing to the petitioner but constituted the portion of his investment in the joint venture which had not been returned to him. It follows that the petitioner is not entitled to take the amount of $19,170.73 as a bad debt reduction in the year 1928.

The petitioner contends in the alternative that of the amount of $19,170.73, the amount of $11,834.23 should be allowed as a loss in the year 1927 and the amount of $7,336.50 should be allowed as a deduction for a bad debt in the year 1928. However, we see no logical reason for splitting up this amount of $19,170.73 in the manner urged. In our opinion, as hereinabove emphasized, the amount of $19,170.73 represented the excess of the amounts invested by petitioner in the joint venture over and above the amounts which he received therefrom. A loss of this type is deductible in the year in which it is sustained. The real question here is as to the amount and year of the loss sustained, if any; and this depends upon the peculiar circumstances involved in this proceeding. *John Thatcher & Son*, 30 B. T. A. 510, 513.

It was in 1924 that the Cache River Drainage District directed the joint venture to cease operations and apparently at that time petitioner was "out of pocket" $19,170.73. However, it was not in that year that the loss was sustained, because there remained a reasonable possibility that the district would be able to raise funds for the original contract to be performed. The evidence shows that the court did permit the district to issue further bonds and thereby raise money. In other words, until it was definitely determined that there would be no completion of this enterprise by the joint venture it could not be reasonably determined whether petitioner had sustained a loss upon the venture as a whole, which is the test. Nor can it be reasonably said that the fact that A. V. Wills & Sons went into bankruptcy in 1926 gave rise to a loss by the petitioner. In our view there still remained the possibility that the work might be continued. However, when in 1927 the district entered into a new contract, that with the petitioner individually, to construct a complete drainage system, it became a certainty that performance by or in behalf of the joint venture would not be continued and that the petitioner would not receive his half of the unpaid $2,000 representing the percentage retained by the drainage district until the completion of the job. In our opinion it was in 1927 that petitioner sustained his loss. However, we can not find that the full amount of his loss was $19,170.73. Petitioner still had pending in the courts a claim for $7,336.50 against A. V. Wills & Sons. If this amount were collected it would reduce his loss in the joint venture by that amount. See *Birdsboro Steel Foundry & Machine Co.* v. *United States*, 3 Fed. Supp. 640, and cases cited therein. We

accordingly hold that in the computation of the petitioner's net income for the year 1927, or as contended by the petitioner, his net loss for that year, the petitioner is entitled to deduct the amount of $11,834.23 as a loss.

The question next arises as to whether the petitioner is entitled to deduct the amount of $7,336.50 in the year 1928. In our opinion the petitioner, upon whom rests the burden of proof, has failed to adduce sufficient evidence that he sustained a loss in this amount in 1928. There is no proof whatever as to the amount of the assets or liabilities of the bankrupt, A. V. Wills & Sons. All we know is that the petitioner claimed this amount as a preferred claim before the District Court, the bankruptcy court; that the master in bankruptcy found for the petitioner; that the bankruptcy court approved the allowance of the claim but denied to it any preference; and that thereafter the United States Circuit Court of Appeals for the Seventh Circuit on November 22, 1928, affirmed the decision of the District Court (29 Fed. (2d) 235). The petitioner apparently contends that if this claim had been held to be a preferred claim he would have received the full amount thereof. However, there is no proof to show how much of the claim could have been or was paid out of the bankrupt's estate after the decision of the Circuit Court of Appeals holding that it was not a preferred claim. We are not at liberty to assume that the claim was either wholly or partly worthless. We accordingly hold that the amount of $7,336.50 is not deductible as a loss in the year 1928. For the same reasons the petitioner is not entitled to deduct this amount as a bad debt in the year 1928.

The petitioner also contends that he sustained a statutory net loss for the year 1927 in the amount of $60,316.19, which he is entitled to carry forward to the year 1928. In arriving at this amount of net loss the petitioner treated the amount of $11,834.23 referred to above as deductible in 1927. This, as pointed out above, was proper, and any net loss resulting from the allowance of this deduction in 1927 may be allowed as a deduction in computing the net income for the year 1928, in accordance with section 117 (e) of the Revenue Act of 1928.[1] In arriving at such amount of net loss the petitioner also eliminated from income an amount of $53,391.84 which had been included by him in his return for the year 1927. This amount represents the final amount paid to the petitioner as damages for breach of contract by Drainage District No. 7 of Poinsett County, Arkansas. Payment was effected by paying petitioner

[1](e) *Net loss for 1926 or 1927.*—If for the taxable year 1926 or 1927 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1926, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years.

$272.96 in cash and $38,000 in certificates of the district, and by crediting the district with an amount which it had advanced to petitioner at a prior time. The certificates were taken by petitioner at par and were fully redeemed. This payment was made to the petitioner in 1927, pursuant to a judgment of the United States Circuit Court of Appeals for the Eighth Circuit rendered in that year (16 Fed. (2d) 598). We see no reason for holding that this whole amount was not income to the petitioner in 1927. Amounts received in settlement of an action for damages are income in the year in which received. *Banta Refrigerator Co.*, 15 B. T. A. 1038; and *Armstrong Knitting Mills*, 19 B. T. A. 318. We accordingly hold that the amount in question should not be excluded from income of the petitioner for the year 1927.

Each of the parties refers us to section 212 (b) of the Revenue Act of 1926 [2] and article 36 of Regulations 69, promulgated under the Revenue Act of 1926,[3] as to each issue.

In our opinion the provisions of article 36 have no application here. In the case of work done for the Cache River Drainage District the petitioner was not operating under the contract. The long term contract was held by A. V. Wills & Sons. Petitioner was operating under the agreement of joint venture with A. V. Wills & Sons. Furthermore, even if these were long term contracts, in neither case was the contract " finally completed and accepted " as required by this provision of the regulations. In the case of the work done for Drainage District No. 7 of Poinsett County, Arkansas, the income received by the petitioner was in reality damages for breach of contract. However, if it were considered income from a long term contract it was not income prior to 1927 for the reason that it was not until 1927 that it was " determined " as required by the regulations.

*Decision will be entered under Rule 50.*

---

[2] (b) The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

[3] ART. 36. *Long-term contracts.*—Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used herein the term " long-term contracts " means building, installation, or construction contracts covering a period in excess of one year. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon the following bases:

* * * * * * *

(b) Gross income may be reported in the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so to treat such income, provided such method clearly reflects the net income. * * *