William J. Peter v. Commissioner.
Peter v. Commissioner
Docket No. 12873.
United States Tax Court
1948 Tax Ct. Memo LEXIS 91; 7 T.C.M. (CCH) 662; T.C.M. (RIA) 48179; September 16, 1948
George J. Regan, Esq., 46 Cedar St., New York, N. Y., for the petitioner. Clay Holmes, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: The Commissioner determined a deficiency in petitioner's income tax for the calendar year 1943 in the amount of $5,819.71. The *92 issue is whether the Commissioner erred in disallowing the deduction of $10,000 claimed by petitioner in his return for 1943. Findings of Fact The petitioner is an individual residing in New York City. He filed his income tax return for the calendar year 1943 with collector of internal revenue for the second district of New York. During 1942 and until November 1, 1943, petitioner was employed by Aqua Systems, Inc., at a salary of $28,000 per year. His position was Vice President in Charge of Operations. During 1943 petitioner was aware that his employment with Aqua Systems would be terminated. He accordingly investigated various businesses with a view to finding a new source of income. He held discussions with James Sottile, Sr., father of James Sottile, Jr., of the partnership of Sottile and Sullivan, engaged in the farming business in Dade County, Fla., with regard to the possibilities of making money in farming in Florida. These discussions took place in the early part of 1943 and during September, October, and November, 1943. After some correspondence with Sottile & Sullivan, petitioner made a verbal agreement with them that he would put up $10,000 to grow a crop of approximately *93 200 acres of tomatoes. This agreement was later reduced to writing, as follows: "AGREEMENT. "This Agreement made and entered into this 11th day of December, 1943 by and between Sottile & Sullivan, a partnership consisting of James Sottile, Jr., and T. M. Sullivan, corartners, party of the first part, and William J. Peter, party of the second part. "Witnesseth: Whereas the party of the first part intends to grow a crop of approximately 200 Acres of tomatoes in Dade County, Florida, during the winter crop season of November, 1943 to May, 1944; and estimates the total cost of producing said crop to be $20,000.00; "And whereas the party of the second part has evidenced a desire to participate in said crop; "Now. Then, Therefore, for and in consideration of the covenants hereinafter enumerated on the part of each of the parties to be performed, the parties hereto do hereby agree as follows, to wit: "1. The party of the first part shall plant, grow, harvest and sell a crop of approximately 200 Acres of tomatoes in Dade County, Florida during the winter crop season from November, 1943 to May, 1944, at a cost of approximately $20,000.00. "2. The party of the second part shall *94 contribute the sum of $10,000.00 toward the expense of growing said crop, said money to be used for labor, seed, compost, fertilizer, insecticides, spray material, fuel, oil, machinery repairs and other expenses incidental to growing said crop. In addition, the party of the second part shall contribute his services in supervising the growing of said crop. "3. Party of the first part shall furnish the land and the necessary machinery and equipment to grow said crop. The value of the above is approximately as follows: Land rent and pumping charges, 200 A. at 21.00 per acre, $4,200.00; trucks and tractors at O.P.A. ceiling rent rates, $5,500.00; miscellaneous equipment such as plows, disc harrows, rakes, mowing machines, and hand tools, $2,000.00; making a total of $11,700.00. "4. For and in consideration of the aforesaid contribution of $10,00.00, the party of the second part shall receive 50% of the net profits realized from said crop, and shall share in like proportions the losses of said venture. "5. The parties of the first part shall keep the cost of growing the said crop as low as is consistent with growing a good crop, but it is understood that unforseen weather, *95 labor, and other conditions could increase the cost of growing said crop so that 200 Acres cannot be planted for the expenditure of the aforesaid $20,000.00. In such an event, and should the parties hereto desire to continue said crop until 200 Acres are planted, then and in that even the parties hereto shall make additional contributions in the same manner as outlined above. "6. It is understood that prior to the execution of this instrument the party of the first part had made disbursements and incurred expenses for labor compost, fuel, pumping charges and machinery repairs, etc., in preparation for the planting of said crop, and it is agreed that such disbursements and charges are properly chargeable against the growing of said crop and are refundable to the party of the first part out of the contribution to be made by the party of the second part. "7. Party of the first part shall keep true and accurate records of the money expended in producing and selling said crop, and of the money received from the sales of said crop, and shall render a statement of same to the party of the second part. No distribution of profits shall be made until all expenses have been paid. "In Witness *96 Whereof the parties hereto hereunto set their hands and seals, the day and year first above written. "Witnesses: "Virginia H. Walton "J. W. Collins SOTTILE & SULLIVAN "By: T. M. Sullivan (SEAL) (Copartner) "James Sottile, Jr. (SEAL) (Copartner) "William J. Peter (SEAL)" Petitioner, pursuant to the verbal agreement, made out two checks to T. M. Sullivan, for $5,000 apiece, one dated November 26, 1943, the other dated December 2, 1943. Both checks were endorsed: "Deposit to account of Sottile and Sullivan. T. M. Sullivan." Following his oral arrangements with Sottile and Sullivan, petitioner went to Florida in November, 1943. His employment with Aqua Systems, Inc., had been terminated that month and he had no other gainful occupation or source of income. Petitioner had never previously engaged in farming. He spent about a week going over the farming area and becoming acquainted with what his responsibilities would be in connection with growing the crop of tomatoes. Thereafter, from November, 1943, till April, 1944, petitioner spent at least six days weekly, from dawn till dusk, on and about the farms supervising the growing of the crop. There were four locations on *97 which the tomato crop was being farmed, the farthest stretch between any two being 12 miles. Land for growing the tomato crop had been leased by Sottile and Sullivan, a foreman hired, and seed beds planted before petitioner arrived in Florida. Petitioner saw to the hiring of labor for the work, checked the time books, made up the payrolls, arranged for the fertilizer and other materials and machinery to be brought to the proper places, supervised the foreman and labor in the planting of the tomato plants, and negotiated for the sale of the tomatoes to the packing houses. The $10,000 which petitioner contributed pursuant to the agreement was used for paying labor, buying fertilizer and seed, and for whatever else was necessary in connection with growing the crop. Following his arrival in Florida, petitioner continued to maintain a home in New York, where he had resided the past seven years, until February, 1944. At that time petitioner expected a profit from his farming operations and was considering investing in the next year's crop. Petitioner sent his wife, who had accompanied him to Florida, back to New York to close up his apartment at this time, and the furniture of the apartment *98 was put in storage. The tomato crop, which had been planted in the fall, was harvested in February. Because of the wartime labor shortage, half of the tomatoes could not be picked when ripe for picking and became unmarketable. Petitioner abandoned Florida and farming in April, 1944. His present home is New York City. In his return for 1943 petitioner claimed deduction for the $10,000 which he had expended under the agreement with Sottile and Sullivan, but respondent disallowed it. Opinion HARLAN, Judge: Petitioner claims a deduction for 1943 under section 23 (a) (1) (A) of the Internal Revenue Code[1] of $10,000, contributed by him toward the production of a tomato crop, planted in 1943 and harvested in 1944. He also relies upon Treasury Department Regulations 111, Sec. 29.23 (a)-11 [2] and Cumulative Bulletin, 1946-2, Mimeograph 6030, [3] to support the deduction. *99 Respondent's contention is that the $10,000 was not a business expense. Nor, he maintains, was it a "preparatory expenditure," within the meaning of Regulations 111, Sec. 29.23 (a)-11, as interpreted by Mimeograph 6030, which would also allow it to be treated as a business expense. It is respondent's argument that the $10,000 was, on the other hand, an investment of capital. Therefore, he maintains, it must be deducted, not in 1943 when the investment was made, but in 1944 when loss of the investment was sustained. Whether this contribution of $10,000 was a business expense or a loss must be determined, first and foremost, by a scrutiny of the agreement under which it was contributed. As stated in the findings, petitioner made an oral agreement with the partnership of Sottile and Sullivan in 1943 that he would put up $10,000 to grow a crop of approximately 200 acres of tomatoes. November 26th and December 2nd he made out checks totaling $10,000 to T. M. Sullivan of Sottile and Sullivan. December 11th the oral agreement was reduced to writing. The agreement between petitioner and Sottile and Sullivan had the elements of a partnership agreement. "A partnership is generally said *100 to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession or business and when there is community of interest in the profits and losses. Commissioner v. Tower (1946), 327 U.S. 280. (Citing Ward v. Thompson, 22 How. 330, 333, 334; Meehan v. Valentine, 145 U.S. 611, 618.) Profits and losses were to be shared equally. Sottile and Sullivan were to contribute services in planting, growing, harvesting and selling the crop and capital in the form of machinery and equipment. Petitioner was to contribute his services in supervising the growing of the crop, and capital in the sum of $10,000. However, the agreement was actually for a joint adventure, which is to be distinguished from a partnership in that "a joint adventure relates to a single transaction." 30 Am. Jur. 679. The agreement was confined to the single transaction of growing "a crop of approximately 200 acres of tomatoes in Dade County, Florida during the winter crop season from November, 1943, to May, 1944, at a cost of approximately $20,000." To support his contention that the $10,000 was a business expense for 1943, *101 petitioner relies upon the provision in the written agreement to the effect that he was to "contribute the sum of $10,000 toward the expense of growing said crop, said money to be used for labor, seed, compost, fertilizer, insecticide, spray material, fuel, oil, machinery repairs and other expenses incidental to growing said crop." He testified that the $10,000 was entirely spent during 1943 for these purposes. Therefore, he maintains, he should be allowed to deduct it as a business expense for 1943. We cannot agree with petitioner's reasoning. The money which was expended for these business expenses was not his money. It was money belonging to the joint adventure, to which petitioner had previously contributed it as his capital contribution. It is to be noted, moreover, that petitioner in his own right neither owned nor leased a farm so as to qualify as a farmer within the definition in Reg. 111, Sec. 29.22 (a)-7: "* * * All individuals, partnerships, or corporations that cultivate, operate, or manage farms for gain or profit, either as owners or tenants, are designated as farmers." Nor had he ever previously had any experience in farming. Whether or not the joint adventure was *102 in the business of farming and was entitled to deduct the $10,000 as a business expense for 1943 is another matter and one which we do not feel called upon to adjudicate here. In any case, if the $10,000 was entirely spent by the joint adventure as a business expense during 1943, of which the proof is certainly meager, it should have been deducted on the partnership return of the joint adventure, not on petitioner's individual return. It is fundamental that, for income tax purposes, a joint adventure, or venture, is to be treated like a partnership. "I.R.C. Sec. 3797 (a) (2) Partnership and partner. - The term 'partnership' includes a syndicate, group, pool, joint venture * * *." The fact that petitioner himself may have physically spent the money for the expenses of the tomato crop while contributing his services to the joint adventure is unimportant. The money had irrevocably passed out of his hands when on November 26, 1943, and December 2, 1943, he gave two checks totaling $10,000 to Sottile and Sullivan. He had made a capital investment of $10,000 in a tomato crop and how the joint adventure spent it, or he as agent of the joint adventure spent it, *103 is for his tax purposes immaterial. A loss on an investment in a joint venture is deductible in the year in which it is sustained. Herman J. Sternberg, 32 B.T.A. 1039. As stated in Regulations 111, Sec. 29.23 (e)-1: "In general, losses for which an amount may be deducted from gross income must be evidenced by closed and completed transactions. * * *" Here petitioner's gain or loss on his capital contribution of $10,000 could not have been determined until the tomato crop in which he had invested was harvested and sold. Those events did not occur until 1944. Therefore, he did not sustain a loss in 1943. Whether or not petitioner sustained a loss of $10,000 in 1944 is not clear from the evidence. He testified that "half of the crop turned pink on us, and they were no good for the market any more," and "when we actually get the returns toward the end of the season we found we had quite a considerable loss." In any case, the amount of his 1944 loss, if any, is not at issue in this proceeding. We hold that the Commissioner did not err in disallowing the deduction of $10,000 claimed by petitioner in his return for 1943. Other issues were raised by petitioner in his *104 petition filed with this Court. No proof was submitted on these issues and they are accordingly decided in favor of the respondent. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - () In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *. ↩
2. Regulations 111. Section 29.23(a)-11. Expenses of Farmers. A farmer who operates a farm for profit is entitled to deduct from gross income as necessary expenses all amounts actually expended in the carrying on of the business of farming. * * * Amounts expended in the development of farms, orchards, and ranches prior to the time when the productive state is reached may be regarded as investments of capital. * * * ↩
3. Cumulative Bulletin 1946-2, Mimeograph 6030 (Referring to portion of Sec. 29.23 (a)-11 beginning "Amounts expended" quoted in footnote 2) * * * Where, however, with respect to taxable years beginning prior to July 1, 1946, taxpayers have, in their returns, treated the above-mentioned preparatory expenditures as ordinary and necessary expenses, such treatment will not be disturbed.↩