HARRY HORNER AND ELZORA HORNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79370.   Filed November 8, 1960.

*Robert R. Jordan, Esq.*, for the petitioners.
*Richard J. Shipley, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined deficiencies in petitioners' income tax for the years 1955 and 1956 in the respective amounts of $535.39 and $1,972.31.

The only issue presented is whether the 1956 payment by Harry Horner of a judgment, court costs, and appellate expense in the sum of $6,255.10 is deductible in that year as a loss under section 165, I.R.C. 1954,[1] or as a bad debt under section 166, or as a nonbusiness bad debt, where the deduction is limited under section 166(d) to a short-term capital loss.

All of the facts were stipulated and they are found accordingly.

Petitioners are husband and wife, residing in Des Moines, Iowa, and they filed their joint income tax returns for the years involved with the district director of internal revenue at Des Moines, Iowa.

On or about November 1, 1953, the petitioner Harry Horner and Robert L. Bloomfield made the decision to enter into the aluminum window and door business. On November 3, 1953, Horner and Bloomfield, acting in their individual capacities, made application with Borg-Warner Corporation for a franchise to assemble and distribute in certain Iowa counties, Koolshade products manufactured by the Ingersoll Products Division of the Borg-Warner Corporation. At this time Horner was the owner of a business known as the Iowa School of Beauty Culture located in Des Moines, Iowa, and was also the owner of several farms located near Herman, Minnesota. Along with the application for franchise, the petitioner Harry Horner submitted his financial statement. The application for franchise was approved and at the same time the Borg-Warner Corporation established a line of credit for purchases to the petitioner Harry Horner, individually.

While the application for franchise was being processed, Horner, Bloomfield, and Glen Sheeder formed a corporation named the Iowa Home Improvement Company for the purpose of manufacturing and assembling the Koolshade products. The certificate of incorporation was issued November 23, 1953, by the secretary of state of Iowa, and the corporation commenced doing business at that time. All incorporators purchased an equal amount of capital stock. All three were directors and officers of the corporation, Horner being elected president. Between November 1953 and September 1955, the corporation assembled and sold aluminum windows and doors.

From the beginning, the petitioner devoted a substantial portion of his time to the business and affairs of the corporation acting more or less as general manager. This was especially so after February

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

1954 when Bloomfield withdrew from the corporation and the petitioner purchased his interest. By this change of interest, the petitioner became the major stockholder of the corporation. The other stockholder, Glen Sheeder, still retained one-third of the stock of the corporation.

From the beginning, all materials ordered for the corporation from Borg-Warner were invoiced to Harry B. Horner, d.b.a. Iowa Home Improvement Company. The invoices were paid by corporate checks signed by the petitioner and another officer of the corporation. In April of 1954 the petitioner submitted a financial statement of the corporation to the Borg-Warner Corporation. Borg-Warner refused to accept the Iowa Home Improvement Company as a debtor and continued its policy of invoicing merchandise purchased for the corporation to the petitioner individually.

The corporation failed to prosper and became insolvent in September 1955. The corporation executed an assignment for benefit of creditors which was filed September 12, 1955, in the District Court of the State of Iowa in and for Polk County, Equity No. 63501. The unpaid account of Borg-Warner at this time was $5,675.21, and this obligation was listed in the schedule of liabilities of the corporation filed with the assignment. Borg-Warner did not file any claim against the corporation in the assignment proceedings for their unpaid account. Pursuant to direction of the court, the assets of the corporation were sold by the assignee and the proceeds distributed to creditors who filed claims. Petitioner Harry Horner received a distribution of $1,217.34 on his claim of $5,200 for a loan to the corporation and a distribution of $1,720.25 on his claim of $4,900 for accrued salary. Horner never filed a claim of any nature in the assignment proceeding with respect to the merchandise involved in the Borg-Warner account, either by way of direct claim for merchandise advanced or by claim for reimbursement to save him harmless from a liability incurred. The affairs of the corporation were fully concluded by the court on March 6, 1956, when it entered a final order discharging the assignee, approving his reports, and closing the assignment proceeding.

On January 13, 1956, the Borg-Warner Corporation brought action against Harry B. Horner, d.b.a. Iowa Home Improvement Company, in the District Court of the State of Iowa in and for Polk County, Law No. 65850, for the balance due on the account in the sum of $5,675.21. This was an ordinary action of account for merchandise sold and delivered to the defendant at the defendant's special instance and request. The petitioner contested, denying liability for the account. The cause was tried to a jury in May 1956 and verdict was rendered against the petitioner for the balance due on the account. Judgment was entered May 28, 1956.

After dismissing appellate proceedings in December 1956, the petitioner, on December 5, 1956, paid the judgment, interest, and court costs in the sum of $6,193.79. During the year petitioner also paid attorney fees and expenses incurred in the Borg-Warner case of $399.40, making a total sum of $6,593.19, which he claimed as a deduction in full on his 1956 income tax return. The amount so claimed is itemized as follows:

| | | |
|---|---|---|
| (a) | Judgment per verdict | $5,675.21 |
| (b) | Interest on judgment from 6/28/55 to 12/5/56 at 5% per annum | 338.09 |
| (c) | Court costs, Law No. 65850 | 180.49 |
| (d) | Appeal bond premium | 76.00 |
| (e) | Transcript of evidence (for appeal) | 113.40 |
| (f) | Harold Newcomb, attorney fee, retainer for services in defending suit | 100.00 |
| (g) | George Brooks attorney fee, for services in defending suit | 110.00 |
| | Total | 6,593.19 |

The petitioner also paid during the year additional attorney fees in the sum of $600 for services rendered in the Borg-Warner lawsuit, which sum petitioner omitted as a deduction on his 1956 return but which was allowed as an additional deduction in the notice of deficiency. It is stipulated that the interest item of $338.09 is a proper deduction for 1956 and that the difference between this amount and the $57.87 allowed as an additional deduction for interest in the notice of deficiency may be reflected in a Rule 50 computation.

Respondent disallowed the deduction, stating in his notice of disallowance:

The judgment secured against you of $5,947.32, and expenses of $757.87, relative to Iowa Home Improvement Company, is disallowed as an ordinary loss and considered to be a nonbusiness bad debt allowable as a short-term capital loss. Since capital loss deduction of $1,000.00 has been otherwise claimed, no further deduction is allowable.

Was the loss, which the parties agree Horner sustained in 1956, incurred in a trade or business or in any transaction he entered into for profit? We hold it was.

The business here involved is the aluminum window and door business. Horner obtained the franchise from the manufacturer, Borg-Warner Corporation, to carry on this business in certain Iowa counties. He received this franchise upon his own credit rating and he promoted the corporation to carry on the business and became its major stockholder, president, and salaried general manager. The business started out with the manufacturer shipping its products to Horner, its franchise holder, and invoicing the merchandise and billing him therefor as an individual. The corporation actually received the merchandise and paid the invoices. When Horner sought to have

the manufacturer ship the merchandise direct to the corporation and bill the corporation for the merchandise invoices the manufacturer refused. The aluminum window and door business continued as it had commenced with Horner as an individual purchasing the merchandise upon his own individual credit and the corporation taking the merchandise and selling it, and, as long as it was able to do so, the corporation paid Horner's merchandise bills with Borg-Warner. This method of operating the business continued up until the corporation made its assignment for the benefit of creditors. At this time there was the sum of $5,675.21 due Borg-Warner for merchandise.

Borg-Warner made no effort to prove any claim in the corporation assignment proceedings. Instead it sued Horner and recovered judgment against him for the merchandise account and Horner paid the judgment, with interest and court costs, and also attorney fees.

Respondent states on brief that his contention is "that the loss petitioner suffered upon payment of the judgment was actually due to the worthlessness of a debt owed to him by the corporation and that, accordingly, the deduction should be limited as a non-business bad debt" under the provisions of section 166(d)(1).

Horner was not listed as one of the corporation's creditors with respect to the $5,675.21 account by the assignee in the assignment for the benefit of creditors proceedings. Respondent argues "that an implied contract would obligate the corporation to reimburse petitioner for the merchandise he had advanced to it." Respondent offers various ways of "viewing the matter" such as Horner actually being surety for the debt, or that it was an "indirect form of guaranty" with Horner merely loaning his credit to the corporation. Another view suggested by respondent is that Horner's position was "similar to the case of an accommodation maker of a note," with Horner, upon payment of the judgment, being subrogated to the manufacturer's rights against the corporation.

Little is to be gained by indulging in various "views" from the perspective of legally labeled transactions. Any realistic view of the unusual facts of this case presents a picture of Horner's engagement in business or his entering into transactions for profit from which the loss resulted.

Respondent argues the case of *Putnam* v. *Commissioner*, 352 U.S. 82, is controlling. There the taxpayer was a guarantor and it was held his payment of the obligation gave rise to a debt from the primary debtor and the loss suffered was from the worthlessness of this debt. Here respondent admits Horner's obligation to the manufacturer was a primary obligation. Nor can it be said Horner was in the position of an accommodation maker of a note instrument, where the accommodator party, Horner, would be subrogated to Borg-

Warner's rights against the corporation. It is not at all clear that Borg-Warner would have any rights against the corporation. It asserted none. It had not invoiced merchandise to the corporation.

If called upon to characterize the situation we would say it looks more like a joint venture into the aluminum window and door business, with Horner participating therein as an individual to the extent of contributing the merchandise on his franchise and individual credit. The unreturned contribution to a joint venture is the type of loss that is deductible the year it is sustained. *Larry E. Webb*, 23 T.C. 1035; *Herman J. Sternberg*, 32 B.T.A. 1039. Businesses or transactions entered into for profit can consist of many different types of activities. If one enters into the activity of furnishing a corporation with goods to sell, upon his own credit, with the expectation of deriving gain when the goods are sold he certainly is engaging in a transaction entered into for profit. In this case, the expectation was that the profits would come to Horner either as salary as president and general manager, from dividends on his stock, or as an increase in the value of his stock.

This is not the case where one secures the advantages of corporate ownership and conduct of a business, and thereafter ignores the entity in order to try to secure advantages flowing from individual ownership and conduct of the business. Horner never did secure the one big advantage of the corporate method of carrying on a business, namely, freedom from individual liability for the business debts. He participated in the business venture in his individual capacity and his loss resulted directly from this participation.

With Horner's participation in his individual capacity in the venture which had to do with and resulted in the aluminum window and door business, it cannot be said this loss petitioner suffered was a nonbusiness bad debt under section 166(d)(1). In the circumstances of this case, the loss resulted from his engagement in transactions for profit and accordingly the loss was deductible in full under section 165(c). Upon the issue presented, we hold for petitioner.

It is stipulated no issue as to the amount of the deduction is presented and for the purpose of reflecting stipulated concessions,

*Decision will be entered under Rule 50.*