George J. Lopo and Helen B. Lopo v. Commissioner.
Lopo v. Commissioner
Docket No. 71134.
United States Tax Court
T.C. Memo 1961-126; 1961 Tax Ct. Memo LEXIS 223; 20 T.C.M. (CCH) 620; T.C.M. (RIA) 61126; May 8, 1961
*223 1. The taxpayer was a joint venturer and expended certain amounts toward the furtherance of the venture. Held, the sums so expended were not deductible business expenses but were contributions to the capital of the joint venture. 2. The taxpayer sought to deduct the loss suffered on the joint venture in the year in which the joint venture terminated due to friction between the co-ventures. Shortly thereafter the taxpayer filed a suit against his co-venturer which, if successfully prosecuted, would have at least made the taxpayer whole (with no gain or loss). Held, the loss was not finally fixed in the year in which petitioner sought to deduct it. 3. Held, the amounts of various business expenses are considered and fixed. 4. Held, the taxpayer's failure to file timely his 1953, return was not due to reasonable cause but was due to willful neglect. Addition to tax determined by respondent under section 291 of the I.R.C. of 1939, approved. 5. Held, addition to tax determined by respondent under section 294(d)(1)(A), I.R.C. 1939, against taxpayer for failure to file a declaration of estimated tax is approved. George J. Lopo, pro se, 1450 Indian Ave., Palm Springs, Calif. Edward M. Fox, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent, in his amended answer, claims only deficiencies and additions to tax as follows: Additions to Tax
I.R.C. 1939 § 294(d)
Year
Deficiency § 291(a)
(1)(A)
1952
$9,951.66
1953
1,394.12
$944.13
$332.60
The issues are as follows: (1) Whether certain sums expended in 1954 were ordinary and necessary business expenses, deductible by petitioners as such, or actually constituted contributions to the *225 capital of a joint venture; (2) whether, if such sums were capital, the year 1954 was the proper year in which to deduct the loss on the joint venture; (3) whether respondent erred in disallowing certain depreciation deductions in whole or in part; (4) whether respondent erred in disallowing the deduction of sums allegedly paid as wages to petitioners' daughter; (5) whether respondent erred in disallowing part of petitioners' alleged selling expenses; (6) whether petitioners had reasonable cause for not filing timely their 1953 income tax return; and (7) whether petitioners willfully neglected to file a declaration of estimated tax for 1953. Findings of Fact Petitioners are husband and wife, residing in Palm Springs, California. They filed joint income tax returns for the taxable years 1952, 1953, and 1954 on or about March 15, 1953, March 10, 1955, and March 10, 1955, respectively, with the district director of internal revenue at Detroit, Michigan. Since Helen B. Lopo is a petitioner herein only by virtue of having filed a joint return with her husband, the latter will hereinafter sometimes be referred to as petitioner or Lopo. Respondent determined deficiencies in income *226 tax and additions to the tax as follows: Additions to Tax, I.R.C. 1939
Year
Deficiency § 291(a) § 294(d)(1)(A) § 294(d)(2)
1952
$11,755.58
1953
1,394.12
$944.13
$332.60
$221.73
1954
1,795.65
151.89
101.26
1955
58.32
In the original petition taxpayers made some 13 specific allegations of error by respondent, and in the allegations of fact indicated a claim of error in one other respect. Respondent's Answer denied any error and contained allegations of fact respecting the denials. The case was set for trial in Los Angeles on December 14, 1959, at which time petitioner moved for a continuance to enable him to obtain counsel, to which motion respondent offered no objection. The motion was granted. The case was again set for trial on June 13, 1960, on which date the parties filed a joint motion for continuance to enable them to prepare and file amended pleadings. This motion was duly granted. Under date of August 9, 1960, respondent filed an Amended Answer, again denying ten of the petitioner's allegations of error (including those for the year 1954), but admitting with respect to 1954 that the sum of $25,721.85 was not *227 sales proceeds omitted from the return, that $1,000 was a bad debt, and that there were no additions to tax for 1954. Respondent also affirmatively alleged that petitioners entered into a joint venture in 1954 with a capital contribution of $12,000. He further alleged that petitioners overstated their cost of sales by $12,000 and that petitioners incurred a net operating loss for 1954 which should be carried back to 1952, thereby reducing the original deficiency. Respondent's affirmative allegations were deemed denied under Rule 18(c)(1) of the Rules of Practice of this Court. The Amended Answer recomputed the deficiencies and additions to tax as first set forth above. The case was duly calendared for trial on October 10, 1960, in Los Angeles, California, at which time taxpayer answered the calendar call and stated that he proposed to try his own case. In this posture of the parties, the case went to trial. The Ford Motor Company, hereinafter sometimes referred to as Ford, gave the Valor Tool and Machine Company, hereinafter sometimes referred to as Valor, a purchase order on February 24, 1954, whereby Valor agreed to manufacture and deliver to Ford a special machine suitable for *228 removing excess vinyl from the outside edges of windshields. The agreed delivery date was September 1, 1954, and the agreed purchase price was $77,950. On April 16, 1954, petitioner, doing business as Alpha Engineering Company, executed an agreement with Valor providing, inter alia, the following: This agreement is to be a joint venture between Valor Tool & Machine Company and Alpha Engineering Company on a 50-50 basis. After machine is completed and accepted by Ford Motor Company all profits are to be split on a 50-50 basis. * * *
Materials are to be included at cost as an expense. Valor Tool will invoice direct labor hours at cost plus burden of ninety-seven (97) per cent of the direct labor cost. Alpha Engineering will invoice direct labor hours at cost plus a burden of sixty (60) per cent of the direct labor cost. * * *
Financial arrangements during the work in process will be as follows: Alpha Engineering will furnish and pay for all design costs. Valor Tool & Machine Co. will put into the work in process of the machine an amount equal to Alpha Engineering Co.'s investment in the design. Subsequent to the point where each party has invested a like amount, *229 all additional costs shall be shared equally. Petitioner designed the machine as agreed, and the design was approved by Ford. Difficulty was encountered in the construction phase of the venture. The machine was not completed according to the terms of the Ford purchase order and was not delivered on the scheduled date. Ford subsequently accepted the machine and eventually paid the sum of $78,400. In the early fall of 1954, friction arose between Valor and petitioner concerning the construction of the machine, which resulted in a suit being filed by Lopo on December 9, 1954, in the Wayne County, Michigan, Circuit Court. On May 16, 1958, the Circuit Court filed its opinion. The court determined that a joint venture had been entered into between the parties; that petitioner had expended $12,000 for direct labor and materials on the joint venture and that Valor Tool and Machine Company had expended $73,958.01 on the joint venture, or a total expenditure on the venture of $85,958.01; that the venture had realized total proceeds in the amount of $78,400, from which amount a commission of $3,500 to Leonard Link was to be deducted, leaving net proceeds in the amount of $74,900; that consequently *230 the venture sustained a net loss of $11,058.01, to be divided equally by the parties to the joint venture; and that petitioner was entitled to a decree for the amount of $6,471, his investment ($12,000) less his share of the loss ($5,529). A decree in accordance with the opinion was entered by the court on May 27, 1958. On the joint return filed for the year 1954 petitioner deducted the amount of $26,681.12 as "Cost of Sales" of the Alpha Engineering Company. Included in that amount was $6,669.33 for direct labor expenses. This amount was incurred for labor used in designing the special machine discussed above and represented a capital contribution made to the joint venture. During 1954 petitioner performed work for at least one other client. On the 1953 joint income tax return petitioner deducted $607.50 as depreciation on an automobile used in business. The respondent disallowed as a deduction the excess above $450. The sum of $810 was deducted in 1954 for auto depreciation. Respondent disallowed the full amount on the grounds that the auto had been previously fully depreciated. In 1953 petitioner's daughter was employed in his office. She performed various office duties including *231 typing and helping with the bookkeeping. Petitioner paid the daughter $598 in wages for her labor and deducted this amount on the 1953 joint return. This amount was an allowable business expense. Petitioner claimed the sum of $1,850.77 as selling expenses for 1953. In the year 1954 the amount of $2,517.18 was claimed as a similar expense. Respondent disallowed as a deduction any amount in excess of $900 for each of the years. The sums of $1,000 and $1,350 for the years 1953 and 1954, respectively, were allowable selling expenses. Petitioner deducted the amount of $1,186.07 in 1953 and $1,055.27 in 1954 for automobile expenses incurred in connection with his business. Petitioner used the auto for traveling to visit clients and also for travelling back and forth from his home to his office. Respondent disallowed the sums of $593.03 and $527.63 for the years 1953 and 1954, respectively. Petitioner's income tax return for 1953 was not filed until March 10, 1955 - approximately one year after the date it was due for filing. Accompanying the return was a letter of the same date which reads in part as follows: My delay in filing form 1040 year 1953 was not due to any wilful intent *232 to avoid compliance with the requirements of the revenue act of 1939 as amended but was occasioned by: The change in my accounting period from a fiscal year to a calandar [calendar] year. basis. Originally I was in a partnership that was on a fiscal year ending Mar. 31. When this partnership was dissolved on April 1, 1953, I continued business thinking that I was still on a fiscal year ending Mar. 31st and my books were closed with the year ending March 31, 1954. However in preparing my tax I was told that I could not file as an individual on a fiscal year basis but would have to consider myself on a calandar [calendar] year. This made it necessary for me to have my books revised to the Dec. 31, 1954 closing, causing me to be considerably late in filing my return. Petitioner's books and records for 1954, as introduced in evidence, did not indicate that they were kept on a fiscal (April 1 - March 31) basis and bore no evidence of a March 31, 1954, closing. Petitioner's failure to file timely the return was not due to reasonable cause but was due to willful neglect. Respondent determined an addition to tax by reason of petitioner's failure to file a declaration of estimated *233 tax for the taxable year 1953. No evidence was presented as to this issue. Respondent is sustained. Opinion VAN FOSSAN, Judge: The first issue is whether certain sums expended in 1954 were ordinary and necessary business expenses deductible by petitioner as such, or actually constituted contributions to the capital of the joint venture, as respondent contends. He raised this issue by affirmative allegation in his amended answer and therefore has the burden of proving it. Rule 32 of the Tax Court Rules of Practice.
It appears to be petitioner's position that the expenditures represented business expenses which should be deducted by him under section 162 of the Internal Revenue Code of 1954. We need not belabor the question of whether Lopo and Valor were participants in a joint venture. The Circuit Court of Wayne County, Michigan, in a litigated action between the parties to the agreement, held that they were. Cf. George N. Spiva, 43 B.T.A. 1174; Estate of Julien W. Vose, 20 T.C. 597. The agreement which formed the basis for the joint venture provided that Lopo was to contribute his design costs, that Valor was to equal his costs, *234 and that the parties thereafter were to share expenses equally. Cf. Beck Chemical Equipment Corporation, 27 T.C. 840. Respondent argues that since the Michigan court found that Lopo expended $12,000 on the project, this amount can be taken to represent Lopo's capital contribution to the venture as provided by the agreement As such, it would not be an ordinary business expense deductible in 1954. Petitioner argues that the funds spent actually were expended as expenses of the design project and spent in 1954. Therefore, he maintains, he should be permitted to deduct such sums as a business expense for 1954. We cannot agree. The money which was expended for these business expenses was not petitioner's money. It was money belonging to the joint venture which petitioner had previously agreed to provide as his capital contribution to the venture. If the money was spent by the joint venture as a business expense during 1954, it should have been deducted on the partnership return of the joint venture, not on petitioner's individual return. The fact that petitioner himself may have physically spent the money for the expenses of the design is unimportant. The money was *235 not his, since it passed out of his hands under the April 16, 1954 joint venture agreement. He made a capital investment of his costs, and how it was expended on behalf of the joint venture is for petitioner's tax purposes immaterial. Petitioner admitted, in testifying, that $5,400 represented direct labor costs expended on the special machine. Actually, this represented net wages, and the various taxes and social security payments must be included to reach the actual wages paid, or a total of $6,669.33. This amount represented (in whole or in part) Lopo's capital contribution to the venture and is not deductible in 1954 as a business expense. Respondent finds that the balance of the $12,000 found by the Michigan court to have been expended on the venture was also deducted as an ordinary expense. Petitioner, however, denies the deduction of any other expense incurred on the project. Respondent had the burden of proof on this item and we think he failed to carry it. For example, respondent argues that it is only reasonable that petitioner had overhead or burden (light, heat, water, daily maintenance, etc.) while his employees were working on the design. This may be true, but respondent *236 has failed to go far enough. He has not shown that petitioner in fact deducted the overhead or burden allocable to the venture. The expenses listed on the 1954 return might be those incurred in performing work for other clients, petitioner having not deducted those incurred with reference to the design project. We hold that petitioner's business expense ("Cost of Sales") deductions for the taxable year 1954 were shown by respondent to be excessive in the amount of $6,669.33, which amount represented (in whole or in part) petitioner's capital contribution to the joint venture. It is implicit in petitioner's allegations of fact in the petition and respondent's affirmative allegations that if these amounts were not to be treated as business expenses deductible in 1954 but as contributions to capital, then the question of loss on the venture was raised. The Michigan court set this amount at $5,529. Indeed, petitioner, in his brief, claims that he is entitled to deduct this loss in 1954. A loss on an investment in a joint venture is deductible in the year in which it is sustained. Herman J. Sternberg, 32 B.T.A. 1039; Larry E. Webb, 23 T.C. 1035. We do not *237 believe that in 1954 petitioner could determine this loss with the finality required for its deduction. He filed suit in 1954 in the Michigan court, seeking to terminate the joint venture and recover his investment. The bill of complaint is sworn to under oath and seeks the recovery of some $25,721.85. Petitioner sought protection of the special machine. This machine had value, and it was subsequently accepted by Ford at a price greater than that specified in the purchase order. Petitioner actually claimed the sum of $25,721.85 in the suit, and if, in fact, he incurred only $12,000 in expenses and if he were successful in the suit, petitioner would have shown a gain on the venture. In any event, there existed the possibility that petitioner would be made whole by the suit and would, therefore, suffer no gain or loss. The valuable machine was in existence, and with this existence there was the possibility of its sale if for no more than salvage value. Petitioner, however, sought to restrain its disposition or the disposition of the proceeds until the termination of the suit. Valor put up bond to protect petitioner. In our view petitioner's gain or loss on his capital contribution could *238 not have been determined until the outcome of the law suit was known. If a loss was sustained it was not ascertained finally in 1954. The opinion of the Michigan court was filed May 16, 1958. We do not here decide the amount of the loss or the nature of the loss; we decide only, if loss there be, that it should not be deducted in 1954. Birdsboro Steel Foundry & Machine Co. v. United States, 3 F. Supp. 640 (Ct. Cl.); Herman J. Sternberg, supra.See, also, Scofield's Estate v. Commissioner, 266 F. 2d 154 (C.A. 6), affirming in part and reversing in part 25 T.C. 774; Rose Licht, 37 B.T.A. 1096; Rev. Rul. 59-388, 1959-2 C.B. 76. In the years 1953 and 1954 petitioner deducted $607.50 and $810, respectively, for automobile depreciation. Respondent disallowed $157.50 for the year 1953 and the full amount in 1954. Although petitioner made some statements concerning the use of two automobiles in the years in question, he gave us no facts upon which we could find respondent's actions were in error. Likewise, petitioner failed to carry the burden of showing that respondent erred in disallowing $593.03 and $527.63 *239 for the years 1953 and 1954, respectively, for automobile operation expenses. Petitioner stated that he used the auto in his business and for going from his home to his office and back. But absent contrary evidence, we hold that the amounts allowed by respondent for such expenses are not shown to be inadequate. We sustain respondent on the depreciation and auto expense deductions. Petitioner paid his daughter $598 as wages. She testified that she performed various services for her father in his business office. There was no contradictory evidence. The sum of $598 for those services was not an unreasonable amount. We hold that respondent erred in disallowing that sum as a valid business expense. Respondent disallowed the excess above $900 as a selling expense deduction for each of the years 1953 and 1954. Petitioner testified that after his return from a business trip he would make out an expense voucher for that trip. Some 88 vouchers, cash register receipts, garage tickets, and the like were offered into evidence by petitioner. No foundation was laid and no connection to his business, other than that mentioned above, was shown for the exhibits. In examining the expense vouchers *240 allegedly made out by petitioner (a few were made out apparently by employees), some appear on the surface to be for excessive or questionable amounts. Some of the receipts show on their face no relation to the business. For example, the State Liquor Store #131 receipt indicates that $65.83 was spent for liquor. We have no way of knowing whether this was a business expense or petitioner's personal expense. However, we are convinced that petitioner incurred expenses in visiting current or prospective clients and that the amounts allowed by respondent are insufficient. Considering the vouchers, the lack of foundation, petitioner's testimony, his total income and total expenditures, and applying the principle of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2), we hold that the sums of $1,000 and $1,350 for the years 1953 and 1954, respectively, were deductible selling expenses. In filing his 1953 return in March 1955, petitioner, who has the burden of proof on the issue, enclosed a letter explaining that because of confusion as to the proper taxable year upon which to account and pay taxes the return was delayed. The books were allegedly closed on March 31, 1954. We have examined *241 the books, such as they are, but see no evidence of this March 1954 closing. The books, for all that appears to us, were kept not on a fiscal basis, as contended by petitioner, but on a calendar year basis. Petitioner argues that the books in evidence were changed later to reflect only a calendar year. Allegedly these were the original books, but we see no adjustments, strike-overs, erasures, and the like indicating any change. Furthermore, assuming that the books were closed in March 1954, we see no reason why another full year was needed to correct the error and file the return. We hold that petitioner's failure to file timely the 1953 return was not due to reasonable cause but was due to willful neglect. Respondent claimed an addition to tax by reason of petitioner's failure to file a declaration of estimated tax for the taxable year 1953. In his petition Lopo asserted that such return was in fact filed but that the copy was left behind in Detroit, Michigan, and he asked leave to amend the petition to reflect such fact when he received the copy. No amendment was sought, and nothing was said about this issue at trial. We accordingly sustain the addition to tax. Decision will *242 be entered under Rule 50.