Nate Kazdin and Sylvia Kazdin v. Commissioner.
Kazdin v. Commissioner
Docket No. 5286-67.
United States Tax Court
T.C. Memo 1969-75; 1969 Tax Ct. Memo LEXIS 218; 28 T.C.M. (CCH) 432; T.C.M. (RIA) 69075; April 17, 1969, Filed John Kennedy Lynch, 907 The East Ohio Bldg., Cleveland, Ohio, for the petitioners. Frank E. Wrenick, for the respondent. TANNENWALD *219 Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $1,791.74 in petitioners' income tax for the taxable year ending December 31, 1964 and a deficiency of $2,394.73 for the taxable year ending December 31, 1965. The sole issue is the proper treatment of bad debt losses sustained as a result of the involvement of petitioner Nate Kazdin in a landscape business. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife and had their legal residence in Shaker Heights, Ohio, at the time of the filing of the petition herein. They filed their 1964 and 1965 joint Federal income tax returns with the district director of internal revenue, Cleveland, Ohio. Petitioner Sylvia Kazdin is a party herein solely because she joined in such returns with her husband. Subsequent references to "Kazdin" shall be deemed to refer to petitioner Nate Kazdin. Petitioners' son Ronald caused Instant Lawns, Inc., an Ohio corporation (hereinafter referred to as "Instant Lawns" or "the corporation"), to be incorporated on March 20, 1964. The corporation 433 thereupon entered the landscaping business, *220 selling and installing lawn sod, sprinkling systems, and miscellaneous landscaping material. Ronald started the business with $10,000, of which $500 was in stock and the balance in the form of a loan to the corporation. Kazdin never owned any stock. Ronald was at all times the president and, for a portion of the period involved herein, Kazdin was the vice president of the corporation. During April and May of 1964, when the business was just beginning to make its first sales, the corporation needed funds. Kazdin borrowed $17,000 from various banks and advanced it to Instant Lawns. On June 1, 1964, Kazdin received two notes of the corporation aggregating that amount, due January 1, 1965 and bearing interest at 6 percent. On April 13, 1964, Kazdin signed a continuing guaranty of payment by Instant Lawns for its purchases of equipment and supplies from Lakeshore Equipment and Supply Company. Ronald and certain other employees of Instant Lawns also joined in the guaranty. Kazdin's primary business was selling insurance. In 1964, he derived approximately $20,000 net income therefrom. Since most of his insurance appointments were in the evening, Kazdin was able to work, and did work, *221 several hours of each day at the office of Instant Lawns. Together with Ronald, he exercised general authority over the affairs of the business and he participated fully in those affairs. Kazdin was to be paid 10 cents per yard of sod handled by Instant Lawns as compensation for his services, but, due to the financial condition of the business, he never received such compensation. The business was unsuccessful and its activities ceased in October of 1964. Kazdin's notes became worthless in 1964, with an unrecovered balance of $11,830. As guarantor, Kazdin paid obligations of the corporation in the amount of $17,753.86, of which $9,822.86 was not recovered and became worthless in 1965. He paid other obligations of the corporation in the amount of $916.51 in 1965, for which he was not reimbursed. Ronald's loan of $9,500 was repaid in full. Ultimate Finding of Fact The arrangement between Kazdin and Instant Lawns was not a joint venture. The losses sustained by Kazdin constituted nonbusiness bad debts. Opinion The sole issue herein is the proper characterization of losses suffered by Kazdin arising out of the indebtedness of Instant Lawns in his favor from direct loans and *222 from payments under a guaranty. Petitioners claim that they are entitled to business bad debt deductions under section 166[1] on the ground that Kazdin and Instant Lawns were engaged in business as joint venturers. Respondent, conceding that the losses were sustained in the amounts claimed, would limit petitioners to nonbusiness bad debt deductions. We agree with respondent. *223 At the outset, we note that, as a starting point for their arguments, both parties have accepted the premise that a valid indebtedness existed. At no point do petitioners argue that Kazdin's financial contributions were of a non-debt variety so as to bring his losses within the ambit of such cases as Harry Horner, 35 T.C. 231 (1960), Larry E. Webb, 23 T.C. 1035 (1955), and Herman J. Sternberg, 32 B.T.A. 1039 (1935). Nor have they contended that Kazdin was engaged in promoting business ventures or that the advances were proximately related to his employment by Instant Lawns. Whipple v. Commissioner, 373 U.S. 193 (1963). Compare Weddle v. Commissioner, 325 F. 2d 849, 851 (C.A. 2, 1963), affirming 39 T.C. 493, 496 (1962), Kelly v. Patterson, 331 F. 2d 753, 756 (C.A. 5, 1964), and I. Hal Millsap, Jr., 46 T.C. 751, 756 (1966), 434 affirmed 387 F. 2d 420 (C.A. 8, 1968), with Trent v. Commissioner, 291 F. 2d 669 (C.A. 2, 1961), reversing 34 T.C. 910 (1960). Similarly, respondent has not attempted to show a familial impetus for Kazdin's *224 outlays so as to bring into play the rationale of Valentine Howell, 41 T.C. 13 (1963), affirmed per curiam 332 F. 2d 428 (C.A. 3, 1964). In view of the foregoing, although petitioners on brief make a passing reference to section 165(a), their right to the claimed deductions must be determined exclusively under section 166. [2]Spring City Foundary Co. v. Commissioner 292 U.S. 182 (1934). The nub of petitioners' argument is that Kazdin and Instant Lawns were engaged in business as joint venturers. If petitioners' contention is correct, then, in a tax sense, it would follow that they were in partnership. Section 7701(a)(2); section 1.761-1(a) (1), Income Tax Regs. The business of the partnership would be imputed to each of them, thereby entitling them to business deductions for losses sustained with respect to their financing of that business. E.g., Harding v. United States, 113 F. Supp. 461 (Ct.Cl. 1953); *225 George A. Butler, 36 T.C. 1097 (1961); Dwight A. Ward, 20 T.C. 332 (1953), affd. 224 F. 2d 547 (C.A. 9, 1955). Whether the arrangement between Kazdin and Instant Lawns constitutes a joint venture and therefore a partnership under section 7701(a)(2) is a question of fact to be determined under all the circumstances in light of the intention of the parties, the language of the written agreements, and the acts of the parties in carrying out the undertaking. Hubert M. Luna, 42 T.C. 1067 (1964); Beck Chemical Equipment Corporation, 27 T.C. 840 (1957); Wm. J. Lemp Brewing Co., 18 T.C. 586 (1952). In Hubert M. Luna, supra, 42 T.C. at pp. 1077-1078, we listed the following factors as relevant, though not necessarily conclusive, in determining whether a joint venture exists for tax purposes: The agreement of the parties and their conduct in executing its terms; the contributions, if any, which each party has made to the venture; the parties' control over income and capital and the right of each to make *226 withdrawals; whether each party was a principal and coproprietor, sharing a mutual proprietary interest in the net profits and having an obligation to share losses, or whether one party was the agent or employee of the other, receiving for his services contingent compensation in the from of a percentage of income; whether business was conducted in the joint names of the parties; whether the parties filed Federal partnership returns or otherwise represented to respondent or to persons with whom they dealt that they were joint venturers; whether separate books of accoun1 were maintained for the venture; and whether the parties exercised mutual control over and assumed mutual responsibilities for the enterprise. The facts herein clearly militate against a finding that a joint venture existed. To be sure, Kazdin and his son both testified that a joint venture was intended, but their testimony was conclusory in character, largely self-serving, and uncorroborated. Moreover, we note that at least Ronald was unclear as to whether the claimed joint venture was between himself and Kazdin or between Instant Lawns and Kazdin, although we attach little significance to this dichotomy in view *227 of the absence of joint venture characteristics in either case. Beyond this, to find a joint venture or partnership between Kazdin and Ronald would require us to disregard the existence of Instant Lawns. This we are not prepared to do. Cf. Ernest H. Weigman 47 T.C. 596 (1967), affirmed per curiam 400 F. 2d 584 (C.A. 9, 1968). Beyond the testimony, only three factors on the record herein point towards a joint venture; (1) the substantial time and effort that Kazdin devoted to the affairs of the business; (2) his general authority over the affairs of the business; and (3) his use of his personal credit to obtain money and equipment for the business. On the other hand, petitioners have introduced no evidence that: (1) a partnership return was filed; (2) business was conducted in any name other than that of Instant Lawns; (3) books were kept for the joint venture distinct from those of the partnership; (4) there was any agreement to share profits and losses; or (5) Kazdin was held out as a partner or joint venturer. See Hubert M. Luna, supra. Of critical significance is the absence of any agreement to share profits and losses. 435 *228 Compare Wm. J. Lemp Brewing Co., supra, with Beck Chemical Equipment Corporation, supra. That there were no actual profits to share is immaterial. The key is that if there had been profits, they would have been shared. To be sure, Kazdin was to have been paid 10 cents per yard of sod handled by the corporation, but, as far as the record shows, he was entitled to these payments irrespective of whether Instant Lawns collected from its customers. And the fact that the payments were to be based upon physical volume of business insulated Kazdin from the effect of price changes, whether beneficial or detrimental, so that the payments were even less closely tied to the profits of the business than if they had agreed to share gross monetary receipts. What is more, the sharing of such receipts is not equivalent to a sharing of profits. Compare Uniform Partnership Act, section 7(3). In any event, Kazdin himself testified that the payments were to represent compensation for his services to the corporation. The mere rendition of services to another for compensation cannot be equated with a joint venture. Cf. Ray S. Robinson, 44 T.C. 20 (1965); Isadore Louis Rosenberg, 15 T.C. 1 (1950); *229 C. J. W. Lttolander, 5 B.T.A. 651 (1926). Compare Uniform Partnership Act, section 7(4)(b). In short, we take the situation as the parties constructed it. Instant Lawns was a viable separate entity. Kazdin worked for the corporation and had an arrangement whereby he was to be compensated for his services. Kazdin also loaned the corporation money and received its interest-bearing notes as evidence thereof. Those loans were nonbusiness debts in Kazdin's hands and his losses with respect thereto are subject to the limitations of section 166(d). Decision will be entered for the respondent. Footnotes
1. SEC. 166. BAD DEBTS. (a) General Rule - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
2. It appears to us that, in the context of this case, the critical question under section 165(a) would still turn upon the existence of a joint venture - the very issue which controls our decision herein.↩