T.C. Memo. 2016-229

UNITED STATES TAX COURT

WALTER S. MACK, JR. AND CONSUELO C. MACK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7186-14.                          Filed December 19, 2016.

In 2011 P-H was a partner of a New York partnership, which
reported P-H's distributive share of partnership income as $479,743.
On their timely filed 2011 tax return, Ps reported only $75,000 of the
income from P-H's partnership. Ps contend that P-H's fiduciary
duties under State law required him to use the remainder to pay
partnership expenses to keep the firm from failing.

<u>Held</u>: Ps are liable for income tax on P-H's full distributive
share of partnership income for 2011. Any payment of partnership
expenses by P-H was a contribution to capital, and he can deduct his
share of the partnership's expenses.

<u>Held</u>, <u>further</u>, Ps are liable for an accuracy-related penalty for
an underpayment attributable to a substantial understatement of
income tax for their failure to report partnership income.

**[\*2]**   Walter S. Mack, Jr., and Consuelo C. Mack, for themselves.

Shawna A. Early, for respondent.


MEMORANDUM OPINION


GUSTAFSON, Judge:  Pursuant to section 6212(a)(1),[1] on December 23, 2013, the Internal Revenue Service ("IRS") issued to petitioners Walter S. Mack, Jr., and Consuela C. Mack a notice of deficiency, which determined for 2011 a deficiency in tax of $140,302 and an accuracy-related penalty of $28,060 under section 6662(a).  The Macks filed a timely petition under section 6213(a) for redetermination of the deficiency and the penalty.

The case is before the Court on a motion for summary judgment filed by respondent, the Commissioner of the IRS, which the Macks have opposed.  The sole issue raised by the petition[2] is whether, as the Macks contend, Mr. Mack's

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (26 U.S.C.), as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Macks' opposition to the motion for summary judgment, signed only by Mr. Mack, states:  "I have the authority and permission to represent my co-petitioner spouse, Consuelo C. Mack. * * * All decisions and acts that the Respondent complains of are entirely my responsibility, and I ask whatever the consequences of my actions or omissions that such be visited upon me and me

(continued...)

**[*3]** otherwise taxable income from his partnership is reduced by his alleged obligation to make expenditures on behalf of the partnership. We hold that it is not, and we will grant the Commissioner's motion.

<u>Background</u>

For purposes of the Commissioner's motion for summary judgment under Rule 121, we assume correct the facts asserted by the Macks, as well as facts demonstrated by the Commissioner that the Macks did not dispute.[3]

---

[2](...continued)
alone." If this is an attempt to assert for Mrs. Mack a claim for "innocent spouse" relief under section 6015--a claim not hinted at in the petition (and not otherwise articulated or supported in the opposition)--then we decline to entertain it. <u>See</u> Rule 34(b) ("The petition in a deficiency or liability action shall contain * * * [c]lear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability. * * * Any issue not raised in the assignments of error shall be deemed to be conceded"). Thus, any "innocent spouse" claim that Mrs. Mack may have is "not an issue in * * * [this] proceeding." <u>See</u> sec. 6015(g)(2).

[3]A motion for summary judgment under Rule 121will be granted only if it is shown that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. <u>See</u> Rule 121(b). In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party. <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994). It is at best only debatable that the Macks made a factual showing of the critical fact (that Mr. Mack's share of DRKM's income was not paid to him but was used instead to pay firm expenses) that would be adequate even under the permissive standard of Rule 121, since they relied not on affidavits but only on very general statements in brief, and the only financial data they submitted did not pertain to the relevant

(continued...)

**[*4]** Income from DRKM

Mr. Mack is an attorney admitted to practice law in the State of New York, and he is a partner in the firm of Doar, Rieck, Kaley and Mack ("DRKM"). The notice of deficiency reflects, and the Macks do not dispute, that in 2011 two DRKM entities[4] issued Schedules K-1, "Partner's Share of Income, Deductions, Credits, etc.", that reported Mr. Mack's share of partnership income (i.e., partnership revenue over expenses) as $18,357 and $461,386, totaling $479,743. It was then incumbent on Mr. Mack to reflect that on his tax return.

DRKM's "negative capital"

However, Mr. Mack alleges that, in the wake of the 2008 recession, other partners at DRKM could not cover their shares of the firm's expenses and that, as a result, the firm had gone into "significant negative capital". Mr. Mack felt that it was his fiduciary obligation under New York partnership law[5] to cover other

---

[3](...continued)
period.

[4]Both the notice of deficiency and the tax return reflect Schedules K-1 for two DRKM entities. The distinction between these two entities is not explained in our record.

[5]Mr. Mack states that New York State "Partnership Law, Article 4" provided the basis for his belief that he had a fiduciary duty to devote a portion of his share of the partnership income to pay firm expenses. This article of New

(continued...)

[*5] partners' partnership expenses.  Mr. Mack claims that his DRKM "capital account bore no relationship to the financial condition of the partnership, and what little money was available to * * * [Mr. Mack] was used to absorb expense [sic] that normally would have been expenses of the firm."  Mr. Mack does not allege that any partnership expenses were omitted from the partnership's returns and Schedules K-1.

Advice from tax professionals

Because the available money had allegedly not been paid out to Mr. Mack but had been used to pay firm expenses, Mr. Mack evidently felt it should not be treated as income to him.  But according to Mr. Mack,

> When I sought the advice of the firms' accountants and tax preparers, I was in essence told that the tax law was unfair and unjust under these circumstances, and my options were to dissolve the firm, take all the capital in the firm to pay my taxes and move on, and let my partners fend for themselves, and the employees go on unemployment.  When I discussed [m]y obligations under New York State Partnership Law to act as a fiduciary to my partners, I was told to be prepared to face the consequence of that decision as I am now,

---

[5](...continued)
York's partnership statute, N.Y. P'ship Law art. 4 (McKinney 2015), does include fiduciary obligations that partners owe each other, but it is not clear what section in particular gave Mr. Mack the impression that he was obligated to pay other partners' shares of entity expenses.  In any event, whether Mr. Mack had an obligation under State law to reinvest some of his income in the partnership is not relevant to the amount of DRKM's income properly attributable to him for Federal income tax purposes.

**[\*6]** that the Respondent would likely be deaf to the financial realities of the firm and not respect the state law fiduciary partnership duties.

That is, the tax professionals told Mr. Mack that the law unfairly required him to report the income, but he decided not to follow the advice of the tax professionals and instead to "face the consequence".

Non-reporting on Form 1040

The Macks prepared their own Form 1040, "U.S. Individual Income Tax Return", for 2011 and filed it on October 22, 2012. On the attached Schedule E, "Supplemental income and loss", line 28(j) ("Nonpassive income from Schedule K-1"), they reported that their income from the two DRKM entities was $25,000 and $50,000, totaling $75,000, rather than the actual DRKM total of $479,743.

Notice of deficiency

On December 23, 2013, the IRS issued a notice of deficiency to the Macks relating to taxable year 2011. The IRS determined that the Macks had failed to report partnership income from DRKM in the amount of $454,743.[6] The IRS also

---

[6]The return reported on Schedule E the two DRKM amounts totaling $75,000 and a loss of $5,552 from an entity called "Macktrack, Inc." (a loss for which a deduction was not disallowed in the notice of deficiency), yielding total partnership income of $69,448 on line 32. The notice of deficiency stated that the total income from DRKM shown on the return was only $25,000 (not $75,000)

(continued...)

**[\*7]** determined an accuracy-related penalty of $28,060 under section 6662(a) for an underpayment attributable to a substantial understatement of income tax.

Tax Court proceedings

On March 21, 2014, the Macks timely mailed their petition to this Court. In the petition, they contend that: (1) New York partnership law imposed a fiduciary duty upon Mr. Mack not to compel DRKM to fail; and (2) the expenditure of DRKM funds to pay partnership expenses left the firm with no money to pay Mr. Mack his share of income and left him with no money to pay his Federal income tax liability.

On May 27, 2015, the Commissioner filed a motion for summary judgment under Rule 122.

As to their underlying Federal tax liability, the Macks' response to the Commissioner's motion essentially advances the same two arguments that are in their petition (i.e., they received no actual income in 2011, and they were therefore unable to pay their income tax).

---

[6](...continued)
and calculated the unreported partnership income as $454,743 (rather than $404,743, as we would calculate it). This $50,000 discrepancy can be corrected or explained under our Rule 155 procedures.

**[*8]** As to the accuracy-related penalty, the Macks oppose its imposition upon them, arguing that it would be inappropriate to impose the penalty in light of Mr. Mack's good-faith payment of partnership expenses.

## Discussion

The issues for decision are whether the Macks received and failed to report taxable income from DRKM for taxable year 2011, and whether they are liable for the accuracy-related penalty under section 6662(a) and (b)(2) for an underpayment attributable to a substantial understatement of income tax. As to both questions, we hold in favor of respondent.

## I.     Partnership taxation principles

Section 701 provides:  "A partnership * * * shall not be subject to the income tax imposed by this chapter.  Persons carrying on business as partners shall be liable for income tax only in their separate or individual capacities."  In determining his individual income tax, each partner must separately include his distributive share of the entity's taxable income or loss.  Sec. 702(a).

Even assuming the Macks' factual assertions, DRKM's income is taxable to Mr. Mack as a partner to the extent of his distributive share.  See sec. 702(c).  This is so whether Mr. Mack received distributions or not, "[f]or it is axiomatic that each partner must pay taxes on his distributive share of the partnership's income

**[*9]** without regard to whether that amount is actually distributed to him." United States v. Basye, 410 U.S. 441, 453 (1973).

The Macks have not provided evidence to challenge effectively the IRS's determinations for 2011. They do not dispute that DRKM had income (revenue greater than expenses) in 2011 nor that Mr. Mack's share was $479,743. Rather, they simply assert that the firm did not distribute to him his share of the 2011 income (a fact that would not affect the attribution of that income to him) and that the firm used its available money to pay firm expenses (a fact that could generate partnership deductions, reducing the firm's income, and Mr. Mack's share of it).

If Mr. Mack did in effect plow his share of the 2011 income back into the firm (because he thought that State law required him to do so), then that amount presumably constituted a contribution to the firm's capital and would increase his own capital account at the firm, see 26 C.F.R. sec. 1.704-1(b)(2)(iv)(b) and (c), Income Tax Regs., but such a capital contribution is not deductible, see sec. 721 (providing nonrecognition treatment for contributions to partnerships by partners); Lopo v. Commissioner, T.C. Memo. 1961-126, 20 T.C.M. (CCH) 620, 624 (1961) (holding that capital contributions to joint ventures are not deductible business expenses).

[*10] As a partner in DRKM, Mr. Mack was obliged to report his share of the firm's income, whether or not it was distributed to him, and whether or not that money was thereafter used to pay firm expenses.

## II. Ability to pay

The Macks do not advance an argument based on partnership taxation principles. Rather, their argument is that Mr. Mack could not reasonably be expected to pay tax on money that was never paid to him. This argument may reflect a misunderstanding of the nature of this case and the jurisdiction that this Court has been given.

The Tax Court is a court of limited jurisdiction. We therefore exercise jurisdiction only to the extent expressly provided by statute. Breman v. Commissioner, 66 T.C. 61, 66 (1976). In a case such as this one, brought pursuant to section 6213(a), the Tax Court has jurisdiction to redetermine a "deficiency" of tax; a "deficiency" of income tax does not consist of the portion of the liability that has not been paid but instead consists of the portion of the liability that was not reported. See sec. 6211(a).

A taxpayer's assertion that he has no money to pay an income tax liability might be relevant in a "collection due process" ("CDP") case brought pursuant to section 6330(d); and in a deficiency case the assertion might be relevant to an

[*11] argument that he should not be held liable for an addition to tax for failure to timely pay, pursuant to section 6651(a)(2) (which the IRS did not determine in this case). But where, as here, the issue is the unreported amount of the liability, the Macks' argument misses the mark.

A taxpayer's ability to pay the tax he owes has no bearing on the amount of his or her tax liability. The Macks may in the future raise issues of collectibility at a CDP hearing before IRS Appeals under section 6320 or 6330, and the judicial appeal of an IRS determination in such a hearing would lie in this Court. However, in the instant case, a deficiency case arising under section 6213(a), the Macks' argument about their inability to pay is not relevant to our ultimate issue-- the amount of their tax liability.

We therefore uphold the IRS's determinations regarding the taxability of Mr. Mack's distributive share of partnership income from DRKM.

III. Accuracy-related penalty

We now consider whether the Macks are liable for the accuracy-related penalty. See sec. 6662(a). A taxpayer is liable for an accuracy-related penalty as to any portion of an underpayment attributable to, among other things, a substantial understatement of income tax or negligence. Sec. 6662(a) and (b)(1) and (2). There is a substantial understatement of income tax if the amount of the

[*12] understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A); 26 C.F.R. sec. 1.6662-4(a), Income Tax Regs.

The Commissioner has the burden of production and must present sufficient evidence that it is appropriate to impose the penalty. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner satisfies his burden of production, the taxpayers must present evidence sufficient to persuade the Court that they should not be held liable for the penalty. Higbee v. Commissioner, 116 T.C. at 447.

Although the Macks' understatement of income tax may be recomputed under Rule 155, see supra note 6, it is clear that the understatement greatly exceeds both $5,000 and 10% of the tax required to be shown on the return. Thus, the Commissioner has met his burden of production regarding the existence of a substantial understatement of income tax for 2011. (Because we conclude that there is a substantial understatement of income tax, we need not address negligence.)

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the substantial understatement penalty is inappropriate. Higbee v. Commissioner, 116 T.C. at 446. A taxpayer

**[\*13]** who is otherwise liable for the accuracy-related penalty may avoid the liability if he successfully invokes one of three other provisions: Section 6662(d)(2)(B) provides that an understatement may be reduced, first, where the taxpayer had substantial authority for his treatment of any item giving rise to the understatement or, second, where the relevant facts affecting the item's treatment are adequately disclosed and the taxpayer had a reasonable basis for his treatment of that item. Mr. Mack made no showing that would implicate either of these two provisions.

The third provision available to a taxpayer who resists the accuracy-related penalty is section 6664(c)(1), which provides that no penalty "shall be imposed under section 6662 or 6663 with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion." The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort to assess her or his proper tax liability. Id.; see Halby v. Commissioner, T.C. Memo. 2009-204.

**[*14]** Taxpayers often invoke this "reasonable cause" defense by showing reliance on the advice of a tax professional. E.g., Woodsum v. Commissioner, 136 T.C. 585, 591 (2011). Such a contention requires the taxpayer to show three things by a preponderance of the evidence: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

If the Macks contend that their failure to include the proper amounts was for reasonable cause or in good faith, then the contention fails. Mr. Mack admits that tax professionals explained to him that the tax law required him (albeit "unfair[ly]", they said) to report his share of the partnership income (and advised him to dissolve the firm in order to stay in compliance with his own tax obligations), and that he disregarded their advice and affirmatively decided not to do so but instead to "face the consequence". The accuracy-related penalty is now part of that consequence.

**[\*15]** To reflect the foregoing,

An appropriate order will be issued granting respondent's motion, and decision will be entered under Rule 155.